IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID WESLEY BLAIR, #233734,  )
              )
   Plaintiff,     )
              )
  v.         )   CASE NO. 2:12-CV-909-WHA
              )      [WO]
              )
KIM THOMAS, et al.,    )
              )
   Defendants.    )

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by David Wesley Blair ["Blair"], a state inmate, challenging actions taken against him during his incarceration at the Draper Correctional Facility ["Draper"].  In the complaint, Blair alleges correctional officials violated his constitutional rights with respect to his classification as a restricted offender and challenges the conditions of confinement at Draper.  *Complaint - Doc. No. 1* at 2-3.  Blair names Commissioner Kim Thomas, Deputy Commissioner Jeffrey Williams, Warden Louis Boyd, Warden Phillis Billups and Classification Specialist Tara Walker as defendants.  Blair seeks monetary relief and requests issuance of an order requiring the defendants to remove him from restricted offender status.  *Id*. at 4.

The defendants filed a special report, supplemental reports and supporting

evidentiary materials addressing Blair's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as a motion for summary judgment.  *Order of February 6, 2013 - Doc. No. 24*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord

> deference to the views of prison authorities.  Unless a prisoner can point to
> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Blair is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own

conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").   Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.   *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).   What is material is determined by the substantive law applicable to the case.   *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will

preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine

dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Blair fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  ABSOLUTE IMMUNITY

Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing and under the facts of this case, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary

damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## IV.  DISCUSSION OF CLAIMS

### A.  Conditions of Confinement

Blair complains that while confined at Draper he has endured "cruel and unusual punishment ... involv[ing] the physical conditions of Draper Correctional concerning poor health care service[;] denial of basic human needs; overcrowding; excessive noise; insufficient locker storage space; inadequate heating and cooling; improper ventilation; unclean and inadequate restrooms; unsanitary dining facilities and food preparation; housing with mentally and physically ill inmates." *Complaint - Doc. No. 1* at 3.

The defendants deny that the conditions about which Blair complains violated his constitutional rights.  Defendant Boyd addresses Blair's conditions claims as follows:

> Inmate Blair complains of cruel and unusual punishment involving the physical conditions at Draper Correctional Facility.  Inmate Blair complains of poor health service and denial of basic needs.  Inmate Blair is not specific in regards to poor health services; however, the Alabama Department of Corrections contracts with a private company to provide health services to all inmates confined [in the state prison system].  All basic human needs such as food, shelter, and clothing are provided routinely.
> Inmate Blair complains of overcrowding.  It is a fact that every major correctional institution is over its intended physical occupancy.
> Inmate Blair complains of excessive noise.  When in fact the institutions are overcrowded, it would be naturally assumed that the noise level would be more than normal.  Inmate Blair complains of insufficient

8

locker storage space.  Space provided for storage of inmate property is [provided as] outlined in Administrative Regulation 338.  Inmate Blair makes a claim of improper ventilation.  Inmate Blair does not have [adequate knowledge] about the ventilation system here at Draper.  It does operate. Inmate Blair claims that restrooms are unclean and inadequate.  There are 14 inmates assigned to each dormitory to clean the dorms and restrooms.  A clean-up Supervisor is employed to ensure that the inmates adequately clean the dorms and have the necessary supplies.

Inmate Blair claims the dining facility and food preparations are unsanitary.  The dining facility and food preparation is reviewed on a monthly basis by a Registered Nurse from [the] medical Services Unit.  The Alabama Department of Corrections, Office of Health Services, employs an Environmental Supervisor, who makes periodical Food Service Inspection Reports on the dining facility.  The most recent score was 86.  The State of Alabama Health Department also makes unannounced inspections of the dining hall.

Inmate Blair claims to be housed with mentally and physically ill inmates.  Every major institution in the State of Alabama will house inmates with some type of mental illness or physical impairment

*Defendants' Exhibit 2 (Affidavit of Louis Boyd) - Doc. No. 21-2* at 1-2; *Defendants' Exhibit 3 (Affidavit of Phyllis Billups) - Doc. No. 21*-3 at 1-2 (same).  In sum, the defendants maintain that Blair was exposed to neither inhumane nor unsanitary conditions during his incarceration at Draper.

Although overcrowding and under staffing exists in the Alabama prison system, these facts, standing alone, are not dispositive of the issues before this court.  Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Eighth Amendment proscribes those conditions of confinement which involve the wanton

and unnecessary infliction of pain.  *Id*. at 346.  Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Id*. at 348 (citation omitted).  "'[T]he Constitution does not mandate comfortable prisons.'  *Id*. at 349, 101 S.Ct. at 2400.  If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'  *Id*. at 347, 101 S.Ct. at 2399.  Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'  *Id*."  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  Although, "the Constitution 'does not mandate comfortable prisons' ... neither does it permit inhumane ones."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citation omitted); *Rhodes*, 452 U.S. at 345-346 (Conditions may not be "barbarous" nor may they contravene society's "evolving standards of decency.").  "[A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment."  *Crosby*, 379 F.3d at 1296.

A prison official has a duty under the Eight Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer,* 511 U.S. at 832  (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-527 (1984)); *Helling,* 509 U.S. at 31-32.  To demonstrate an Eighth Amendment

10

violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments

11

Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347. "Conditions ... alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency.... But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347. To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id*. at 366. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991). The court's consideration of whether the totality of a plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme

Court's admonishment that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need.... To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991) (emphasis in original).

A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must

be a strong likelihood, rather than a mere possibility before [the responsible official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). As the foregoing makes clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under section 1983...." *Id*. section 1983...." *Id*. Thus, in order to survive summary judgment on any claim grounded in deliberate indifference, Blair is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("To be deliberately indifferent, Defendants must have been 'subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and the prison official must also 'draw that inference.' *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.").

Blair has failed to present any evidence that the conditions about which he complains presented a severe or extreme condition that posed an unreasonable risk of serious damage to either his health or safety. In addition, Blair has not alleged that he

suffered requisite harm as a result of the conditions referenced in the complaint. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (holding that a prisoner must prove that the prison condition he complains of is sufficiently serious and "extreme" to violate the Eighth Amendment). Blair's mere subjective beliefs and conclusory allegations regarding the constitutionality of these conditions do not create a genuine dispute of material and, as such, "are insufficient to withstand summary judgment." *Holifield*, 115 F.3d at 1564 n.6. Accordingly, the court concludes that these alleged conditions do not rise to the level of an Eighth Amendment violation. *Alfred v. Bryant*, 378 Fed. Appx. 977, 980 (11th Cir. 2010) ("'Inmates cannot expect the amenities, conveniences and services of a good hotel.'" (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)).

Based on the foregoing, the court finds that the challenged conditions though uncomfortable, inconvenient, unpleasant and/or objectionable were not so extreme as to violate the Eighth Amendment. *Chandler v. Baird*, 926 F.2d at 1289 (11th Cir. 1991). Even when viewing the totality of the allegations made by Blair, it is clear that these claims do not amount to conditions which fall below applicable constitutional standards as Blair fails to demonstrate that the challenged conditions had "a mutually enforcing effect that produce[d] the deprivation of a single, identifiable human need...." *Wilson*, 501 U.S. at 304. "To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.

Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id*. Consequently, summary judgment is due to be granted in favor of the defendants on the conditions claims. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

To the extent the allegations set forth in the complaint can be construed to allege a claim of deliberate indifference to the plaintiff's health or safety arising under the Eighth Amendment, this claim likewise fails. Blair sets forth only conclusory allegations regarding the conditions at Draper and fails to identify any particular incident or condition of which the defendants were aware from which an inference could be drawn that a substantial risk of serious harm existed. *Carter*, 352 F.3d at 1350 ("Plaintiff has failed to establish that the Defendant[s] had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim. When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...."). Moreover, the record is devoid of any evidence showing that the defendants drew the requisite inference and thereafter ignored the risk. Blair has therefore failed to establish each of the requisite elements of deliberate indifference. Consequently, summary judgment is due to be granted in favor of the defendants on any claim of deliberate indifference.

**B. Restricted Offender Classification**

Blair is currently incarcerated on convictions and sentences for murder and first degree assault imposed upon him by the Circuit Court of Cullman County, Alabama on February 20, 2004. The circumstances underlying Blair's murder conviction establish that he participated in a robbery which resulted in the victim's death. Blair maintains that during the commission of this offense he merely acted as a look out for his co-defendant and is only guilty by complicity. With respect to the assault conviction, Blair pled guilty to first degree assault arising from an attack on a fellow inmate in the Cullman County Jail. During this attack, the victim was brutally beaten and sexually tortured by several inmates. Despite his guilty plea to assault, Blair maintains that he did not assault the inmate and did not participate in the sexual torture of the inmate. Blair is classified as a restricted offender in accordance with the classification guidelines adopted by the Alabama Department of Corrections.

1. Assigned Custody Classification. To the extent Blair argues he is entitled to a recommendation for and/or placement in a more favorable custody classification, *Complaint - Doc. No. 1* at 3, this claim provides no basis for relief as an inmate confined in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Francis v. Fox*, 838 F.2d 1147 (11th Cir. 1988); *Jones v. Diamond,* 594 F.2d 997 (5th Cir. 1979).

2. Eighth Amendment.  Blair alleges that his classification as a restricted offender violates his rights under the Eighth Amendment. The Constitution proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981).  Only actions which deny inmates "the minimal civilized measure of life's necessities," are grave enough to establish constitutional violations.  *Id.* at 347.  The challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [Plaintiff's] future health or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotations and citations omitted).

Here, the decision of correctional officials to classify Blair as a restricted offender based on the criteria in the classification manual does not amount to a violation of the Eighth Amendment.   The defendants are therefore entitled to summary judgment on this claim.

3. Equal Protection.  Blair, a white male, maintains that the defendants deprived him of equal protection because they refused to recommend that he be removed from and/or failed to ensure his removal from restricted offender status while undertaking these actions for three black inmates with serious felony convictions. *Complaint - Doc. No. 1* at 3.  Blair identifies inmates Derrick Wallace, Jovarus Foster and Greg Dubose, as similarly situated

to himself and argues that these inmates received more favorable treatment from the defendants regarding restricted offender status while his status remains unchanged "based on race, religion, national origin or some other constitutionally protected basis." *Complaint - Doc. No. 1* at 3. In an amendment to the complaint, Blair clarifies this claim and asserts he has been denied removal from restricted offender status due to his Caucasian race while inmates Wallace, Foster and Dubose, who are black, have been removed from restricted offender status. *Doc. No. 33* at 13.

The defendants deny they acted in violation of Blair's equal protection rights. Specifically, the defendants maintain that the Central Restriction Review Committee ["CRRC"],[2] in accordance with applicable classification criteria and due to Blair's convictions for murder, a murder that occurred during the course of a robbery, and his conviction for first degree assault, the circumstances of which involved the sexual assault of the victim by other individuals who participated in the assault, determined Blair should be classified as a restricted offender. *Defendants' Exhibit 4 to the Special Report - Doc. No. 21-4* at 1-2; *Defendants' Exhibit 1 to the Second Special Report - Doc. No. 39-1* at 1-2.

The initial classification criteria for restricted offender status required that an inmate

---

[2]The defendants are not members of the Central Restriction Review Committee. The CRRC is comprised of the Associate Commissioner of Operations, the Associate Commissioner of Plans and Programs, and/or the Director or Assistant Director of Classification. Classification Specialists, Wardens, Assistant Wardens, the Deputy Commissioner for Governmental Relations and the Commissioner of the Alabama Department of Corrections are not members of the CRRC and do not play an intricate role in the determination of a "Restricted" offender.

19

convicted of either a crime during the course of which a sex offense occurred or murder during the course of a robbery be classified as a restricted offender.  *Defendants' Exhibit 2 to the Supplemental Special Report - Doc. No. 23-2* at 3.  A revision to the classification criteria, which became effective on October 15, 2009 and removed several offenses from eligibility for restricted offender status, continued, however, to delineate such status for those inmates convicted of crimes involving a sex offense and robbery-murder - "[k]illing during the commission of a robbery."  *Id.* at 6;  *Defendants' Exhibit 4 to the Special Report - Doc. No. 21-4* at 3; *Defendants' Exhibit 6 to the Special Report - Doc. No. 21-6* at 3.

The defendants maintain that Blair is properly classified as a restricted offender due to his conviction for murder, a murder which he concedes occurred during the course of a robbery.  It is likewise clear that the fact that Blair may have only served as an accomplice in the murder does not in any way affect his classification based on this conviction nor does his alleged profession of innocence regarding the assault affect the ability of correctional officials to utilize such conviction and its attendant sexual offense in the classification process.  Angie Baggett, the Interim Assistant Classification Director, addresses the claims presented by Blair as follows:

> Inmate Blair claims that he should not be restricted as he did not kill or rob anyone; that his co-defendant Matthew Swan did.  Item three (3) of the restricted guidelines found in the *ADOC Classification Manual* reads, "Robbery/murder/manslaughter.  Killing during commission of a robbery or other crime...."  According to the *Report of Investigation* for Inmate Blair's Murder conviction, the victim was robbed and beaten during an attempt to

steal the victim's wallet.  Even though it appears that inmate Blair did not actually kill the victim, he was a participant in the robbery and murder and was thus convicted of Murder.  The *ADOC Classification Manual* guidelines do not make a distinction based on an inmate's specific involvement in the crime....

Inmate Blair also claims that he should not be a restricted offender because he did not assault, sexually assault or torture a jail inmate; the other inmates did.  Item one (1) of the restricted guidelines found in the *ADOC Classification Manual* reads, "Inmates whose record (past or present) indicate that a sex offense did occur in the commission of an offense, an indictment for the sex offense was returned, but for which there was no prosecution due to plea bargaining or other considerations...." According to a *Report of Investigation* for inmate Blair's Assault conviction, an inmate in the Cullman County Jail was beaten and sexually assaulted by a group of inmates that included Blair.  Inmate Blair was indicted for Sexual Torture/Abuse and Assault I [with respect to this incident].  He subsequently accepted ... a plea agreement for one count of Assault and the Sexual Torture/Abuse [count] was dismissed as a term of the plea.

Finally, inmate Blair claims that he has been denied restriction removal because he is Caucasian.  Race plays no role in the classification process....  Blair has been denied removal of the restricted status because he clearly meets two items of the guidelines.

*Defendants' Exhibit 1 to the Second Special Report - Doc. No. 39-1* at 1-2.

With respect to Blair's claim of discrimination arising from the differential treatment provided to inmates Wallace, Foster and Dubose, the defendants argue that the assignment of restricted offender status to Blair is not based on his race but the circumstances of the convictions for which he is presently incarcerated.  *Id*.  The defendants further argue that Blair is not similarly situated to the three inmates listed in the complaint as the offenses of these inmates do not meet the current criteria for restricted offender status.  *Defendants' Exhibit 1 to the Supplemental Special Report - Doc. No. 23-1*

21

at 2-3.   In addressing the classification status of the inmates identified by Blair, Ms.

Baggett provides the following information:

> Inmate Derrick Wallace (AIS #207881) was convicted of Murder and sentenced on November 5, 1999 to serve life in prison.  Under the guidelines for restricting inmates prior to 2009, Wallace was considered a restricted offender under [the item] which provided for the restriction to apply for drive-by homicides.  After the revisions in 2009, this offense was removed from those that deemed an inmate to be restricted.  Thus, inmate Wallace was reviewed on November 24, 2010 by the CRRC for removal of the restricted determination as he no longer fell within the established guidelines.
>
> Inmate Javarus Foster (AIS #258610) was convicted of Assault I, Assault II and Discharging a Gun into an Occupied Building or Vehicle and sentenced to serve 5 (five) years in prison on May 4, 2009.  Inmate Foster was afforded a review for removal of the previously determined restricted status as his offenses did not result in the death of the victims.  Item nine (9) of the current guidelines provides for a review by the CRRC on a case-by-case basis when the offense is of a particularly violent nature, but did not involve death.
>
> Inmate Greg Dubose (AIS #190408) was convicted of three counts of Robbery I and two counts of Attempt to Commit Murder and sentenced on November 4, 1996 to serve life in prison.  Under the guidelines for restricting inmates prior to 2009, Dubose was considered a restricted offender under [two separate] items....  After the 2009 revisions, the provision relating to convictions for ... attempt to commit [murder during a robbery] was removed from the guidelines.  Thus, inmate Dubose was reviewed on March 8, 2010 by the CRRC for removal of the restricted determination as he no longer fell within a restricted offender category.

*Defendants' Exhibit 1 to the Supplemental Special Report - Doc. No. 23-1* at 2-3.

Moreover, the defendants maintain that the sole basis for Blair's classification as a

restricted offender is the fact that the nature of his convictions meets the classification

criteria for a restricted offender.  *Id*. at 3; *Defendants' Exhibit 1 to the Second Special*

*Report - Doc. No. 39-1* at 3.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed.... The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'... nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally."). To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' ... implies more than intent as volition or intent as

awareness of consequences.  It implies that the decision maker ... selected ... a particular

course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects

upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442

U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500

U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even

arbitrary administration of state powers, rather than instances of purposeful or invidious

discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp,* 481 U.S.

279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).  Where a plaintiff challenges action of

correctional officials, exceptionally clear proof of discrimination is required.  *Fuller v.

Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).

Since this case is before the court on a properly supported motion for summary

judgment submitted by the defendants, Blair bears the burden of producing evidence which

would be admissible at trial sufficient to show:  (i) the defendants provided more favorable

treatment to other similarly situated inmates, i.e., inmates convicted of felony murder

which involved a robbery and murder; and (ii) the decision to deny him favorable treatment

resulted from intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Anderson*, 477 U.S.

at 249 (To preclude summary judgment, plaintiff must present significant probative

evidence showing defendants provided more favorable treatment to similarly situated

persons and did so as the result of intentional discrimination.); *Arlington Heights*, 429 U.S.

at 265 (At the summary judgment stage, the plaintiff must produce specific, substantial evidence that the defendants intentionally discriminated against him due to a constitutionally protected interest.); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendants in providing the challenged disparate treatment is required. "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause."). The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).

Blair makes conclusory and unsupported allegations regarding a denial of equal protection. The only probative evidence before the court indicates that the defendants did not treat Blair differently from inmates with actual comparative offenses and further demonstrates that the actions undertaken in Blair's classification process were based solely on his convictions for felony murder, a murder committed during the course of a robbery, and first degree assault after dismissal of a related indictment for sexual torture/abuse during the plea bargaining process. As previously recognized, *supra* at p. 17-18, an

25

Alabama inmate has no constitutional right to a particular custody classification.  Absent the existence of a constitutionally protected liberty interest, this court must "look to see if persons similarly situated to the plaintiff" - persons with convictions for murder during a robbery - "have been treated differently." *Hammond*, 669 F.Supp. at 1563; *Sweet*, 467 F.3d at 1318-1319.  Although Blair alleges that inmates Wallace, Foster and Dubose have been recommended for/removed from restricted offender status, *Complaint - Doc. No. 1* at 3, the convictions of these inmates establish that they are not similarly situated to Blair as none of them had been convicted of murder during the course of a robbery or of a crime which entailed a sexual offense.  Furthermore, the documents submitted by the defendants demonstrate that the convictions of inmates Wallace, Foster and Dubose do not currently render an inmate eligible for restricted offender status.

In light of the foregoing, the court finds that Blair fails to identify any other inmate with a similar offense towards whom the defendants acted in a more favorable manner and his "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners."  *Sweet*, 467 F.3d at 1319; *Hammond*, 669 F.Supp. at 1563 (emphasis in original) ("To the extent that any equal protection analysis is required [on the plaintiff's assertion of discrimination], absent the plaintiff's establishing a clearly protected liberty or property interest by the Constitution ..., this Court [must] look to see if persons similarly situated to the plaintiff have been

treated differently.... [T]here is **no** evidence that any [individuals] in the same position as the plaintiff have been treated differently from the plaintiff....  The plaintiff has offered the Court nothing on which to base his equal protection claim.  Accordingly, it is the opinion of this Court that the plaintiff's equal protection claim is without merit.").

In addition, although Blair alleges that the defendants subjected him to adverse treatment based on his race, he bases this allegation solely on the fact that he remains a restricted offender while three black inmates have been recommended for and removed from this classification status.  Blair has presented no evidence, probative or otherwise, that racial discrimination or purpose constituted a motivating factor in the decision to continue his classification as a restricted offender.  The mere showing of a disparate impact upon racially diverse inmates is insufficient to demonstrate an equal protection violation. *E & T Realty*, 830 F.2d at 1114; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994).  The arbitrary application of administrative rules likewise does not run afoul of the Constitution. *E & T Realty*, 830 F.2d at 1114.  Blair simply makes the conclusory legal assertion that the decision to maintain his classification as a restricted offender resulted from racial discrimination because three black inmates were removed from restricted offender status.  As previously determined, these inmates were not convicted of offenses which now require their placement in restricted offender status.  Moreover, it is undisputed that correctional officials based the classification of Blair as a

27

restricted offender on his convictions for felony murder, specifically, a murder during the course of a robbery, and first degree assault with an attendant sexual assault.  Thus, the record is devoid of evidence that the defendants or any other correctional official acted due to purposeful discrimination.  Under applicable federal law, the allegations made by Blair are insufficient to show an equal protection violation and summary judgement is due to be granted in favor of the defendants on this claim.

     4.  <u>General Due Process Claim</u>.  Blair challenges his classification as a restricted offender claiming the decision to so classify him was made arbitrarily, capriciously, and improperly in violation of his right to due process.  To support this allegation Blair maintains prison officials did not rely on a judicial determination that he was a violent or restricted offender; rather, they made the determination internally and without the benefit of all the records from the underlying criminal proceedings which he maintains would reflect he is not a violent offender. *Doc. No. 33*.

     The law is well settled that an inmate confined in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Because inmates have no constitutionally protected interest in the level of their custody classification, correctional officials may assign him to any classification level without

implicating the protections of due process.  *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).

Regarding Blair's argument that the decision to classify him as a restricted offender was arbitrary and unreasonable where the determination was not judicially imposed and was based on limited knowledge of the facts and evidence underlying his murder and assault convictions, he is entitled to no relief.  State officials may not deny or restrict access to less restrictive custody classifications for arbitrary or capricious reasons. *Hendking v. Smith*, 781 F.2d 850, 852 (11th Cir. 1986) (classification system contains no inherent constitutional invalidity, but becomes constitutionally offensive only if "the regulation is administered maliciously or in bad faith.").  The consideration of the details surrounding an inmate's criminal conviction(s) when determining the inmate's custody classification, however, does not implicate the Constitution as it is rationally related to the legitimate state interest of ensuring that only those inmates best suited for lower custody classifications are so placed.  *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th  Cir. 1988) (holding that the denial of eligibility for incentive time benefits to inmate who received sentences of over 10 years "is rationally related to the legitimate purpose of preventing the early release of serious offenders [and] does not violate the equal protection clause or due process clause").

Blair does not dispute that he was convicted of murder nor that the murder occurred

during a robbery.  Blair likewise concedes that his co-defendant beat the victim to death and robbed the victim of various items while he acted as a look out during the commission of these acts.  Under applicable state law, Blair is equally and severably "legally accountable" for the acts of a co-defendant.  *Ala. Code* § 13A-2-23(2).  The same is true of the assault conviction.  Prison officials' reliance on all of the facts underlying Blair's convictions to classify him as a restricted offender and deny him a lower security and/or custody level is not violative of the Constitution as the circumstances underlying the crimes may legitimately be used by prison authorities to determine the security and classification status of prisoners.  *Hendking*, 781 F.2d at 852.  Blair's disagreement with prison officials' determination that he meets the ADOC's current classification criteria for restricted offender does not make the review committee's decision arbitrary or capricious, and Blair has presented no evidence indicating that the officials responsible for his classification engaged in arbitrary or capricious action by not recommending him for removal as a restricted offender.  *See Thornton*, 852 F.2d at 527. The court, therefore, concludes that the nature and circumstances of the crimes for which Blair stands convicted meet the criteria for restricted offender status and his classification as restricted offender is "not arbitrary and capricious, but reasonable and appropriate."  *Hendking*, 781 F.2d at 852.

5.  <u>Double Jeopardy</u>.  Blair asserts that the defendants "have possibly violated Double Jeopardy rights by ... placing him in a 'restricted class' of violent offenders...."

30

*Doc. No. 33* at 4. The Supreme Court has consistently held that "the Double Jeopardy

Clause provides three related protections: 'It protects against a second prosecution for the

same offense after acquittal. It protects against a second prosecution for the same offense

after conviction. And it protects against multiple punishments for the same offense.'"

*United States v. Wilson,* 420 U.S. 332, 343 (1975) (internal citation omitted).

> The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, " 'in common parlance,' " be described as punishment. *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 549, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943) (quoting *Moore v. Illinois,* 14 How. 13, 19, 14 L.Ed. 306 (1852)). The Clause protects only against the imposition of multiple ***criminal*** punishments for the same offense, *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938); *see also Hess, supra,* at 548-549, 63 S.Ct., at 386-387 ("Only" "criminal punishment" "subject[s] the defendant to 'jeopardy' within the constitutional mean-ing"); *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) ("In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution"), and then only when such occurs in successive [criminal] proceedings, *see Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

*Hudson v. United States*, 522 U.S. 93, 98-99, 118 S.Ct. 488,493 (1997). The Double

Jeopardy Clause does not apply to proceedings that are not "essentially criminal." *Breed*,

421 U.S. at 528.

Prison classification proceedings are not part of a criminal prosecution. In addition,

the assignment of Blair to restricted offender status is not "punishment" for double

jeopardy purposes. *Taylor v. Gomez*, 182 F.3d 927 (9th Cir. 1999) (holding that inmate's

double jeopardy claim "lack[ed] merit [because] district court correctly reasoned that [his] custody classification is not punishment, but rather a method of housing inmates based on their behavior."); *Welch v. Epps*, 103 Fed. Appx. 828 (5th Cir. 2004) (mere change in custodial status does not qualify as a second "punishment" for double jeopardy purposes.); *Butler v. McDonough*, 2007 WL 2071530, *8 (M.D. Fla. 2007) (The protections of the Double Jeopardy Clause " apply to criminal trials, not ... inmate classifications utilized by jail officials to maintain safety and security...."). Consequently, Blair has failed to state a plausible claim with respect to a violation of the Fifth Amendment's protection against double jeopardy.

6. <u>Ex Post Facto</u>. Blair contends that utilization of the classification criteria for restricted offender status, a criteria promulgated after imposition of his convictions, to classify him as a restricted offender violates the Ex Post Facto Clause of the Constitution as it constitutes additional punishment for his offenses. *Doc. No. 33* at 7.

The Ex Post Facto Clause bars any law which: (1) punishes an act that was innocent at the time the act was committed; or (2) retroactively increases punishment for a crime after its commission. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990). "[T]he Clause is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *California Dep't of Corr. v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (internal quotation marks and citations omitted). "[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort

of 'disadvantage,' nor ... on whether an amendment affects a prisoner's '*opportunity* to take advantage of provisions for early release [or favorable prison programs],' but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Id.* at 506 n. 3, 115 S.Ct. 1597 (citation omitted, emphasis in original). A law that does not increase the punishment imposed upon an inmate for a criminal offense previously committed cannot violate the Ex Post Facto Clause even when applied retrospectively. *See California Dep't of Corrections v. Morales,* 514 U.S. 499, 507–09, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

Application of the classification criteria for restricted offenders to Blair does not violate the Ex Post Facto Claus because it did not increase the punishment imposed upon him for murder and assault beyond his original sentence for these offenses. *Froman v. Peterson*, 74 Fed. Appx. 484, 486 (6th Cir. 2003); *Welch*, 103 Fed. Appx. 828 (mere change in custodial status does not "amount[] to an 'increase' in the "measure of punishment' for *ex post facto* purposes."); *Dyke v. Meachum*, 785 F.2d 267, 268 (10th Cir. 1986) (Ex Post Facto Clause not implicated by Department of Corrections' promulgation of new classification system more stringent with respect to eligibility for minimum custody than former classification system because "the Ex Post Facto Clause does not bar a prison from changing the regulations governing their internal classification of prisoners."); *see also Barna v. Travis*, 239 F.3d 169, 171 (2nd Cir. 2001) ("The Ex Post Facto Clause does not

apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion.").

Blair has submitted no facts or evidence to indicate that the sentences imposed following his convictions for murder and assault have been increased due to his classification as a restricted offender.  Therefore, Blair's allegations are insufficient to set forth a claim cognizable under the Ex Post Facto Clause.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before February 13, 2015 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 26th day of January, 2015.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE